UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ED FRIEDMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 2:20-cv-00237-JDL |
| v. ) | |
| ) | |
| CENTRAL MAINE POWER COMPANY, ) | |
| ) | |
| Defendant ) | |
| ) | |

# DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### 1. The PUC and FCC Records Are Properly Before the Court.

The Plaintiff argues that Central Maine Power Company ("CMP"), by submitting records of proceedings before the Maine Public Utilities Commission ("PUC") and the Federal Communications Commission ("FCC"), has "converted" its motion to dismiss into a motion for summary judgment, and that he should not be required to respond until he has had an opportunity to conduct discovery. ECF 14 at 3-4. He argues that the PUC and FCC records "do not fall within the limited exception" to the general rule that a court entertaining a Rule 12(b)(6) motion should consider only the facts alleged in the Complaint. ECF 14 at 4.

The documents filed by CMP, however, unquestionably are "official public records," which the Plaintiff acknowledges a Court may consider under Rule 12(b)(6). ECF 14 at 4. Furthermore, it is particularly appropriate to take judicial notice of administrative agency proceedings where, as here, they are relevant to defenses of claim or issue preclusion. *See O'Hara v. Diageo–Guinness, USA, Inc*., 306 F.Supp.3d 441, 457 (D. Mass. 2018) ("'[J]udicial notice is properly taken of orders and decisions made by other courts or administrative agencies' when the preclusive effect of those decisions is at issue.") (quoting *Papai v. Harbor Tug and*

*Barge Co.,* 67 F.3d 203, 207 n.5 (9th Cir. 1995), *rev'd on other grounds,* 520 U.S. 548 (1997)). *See also M & M Stone Co. v. Pennsylvania,* 388 F. App'x 156, 162 (3d Cir. 2010) ("To . . . disallow a court from recognizing the existence of [prior judicial and agency] opinions would thwart a defendant's right to raise issue preclusion in a motion to dismiss, and it would obviate the entire purpose of the doctrine.").

### 2. The *Metallo* Decision, Upon Which the Plaintiff Relies, Is Not Controlling.

The Plaintiff relies on *Metallo v. Orlando Utilities Comm'n,* 2015 WL 5124866, (M.D. Fla. Sept. 1, 2015), as support for the proposition that "opt-out fees for radiation-emitting smart meters *do* constitute unlawful surcharges under the ADA." ECF 14 at 7 (emphasis in original). *Metallo*, however, does not stand for such a broad proposition.

In *Metallo*, the plaintiff explicitly alleged in his complaint that a digital meter installed in his home by the defendant had actually "caused him to suffer 'many physical and emotional problems.'" Those problems, he said, included:

> [S]leepless nights, violent headaches, respiratory problems and frequent sneezing, low frequen[c]y humming and buzzing noises that produced shrill ear ringing ... distraction concerning household functions, skin rashes, frequent power outages that created inconveniences and clock re-settings, lack of concentration, confusion and memory loss, insomnia, and inability to return to sleep, dry skin ... and violent ear ringing that exacerbated his tinnitus condition.

*Metallo,* 2015 WL 5124866, *1. The District Court, denying the defendant's motion to dismiss, reasoned that these detailed allegations were sufficient to satisfy Rule 12(b)(6). *Id.* at *3 ("At this stage of the proceedings, it is enough for Metallo to allege symptoms specifically linked to a mental or physical condition that substantially limits his ability to perform at least one major life activity, thereby placing Defendants on notice of his claims.") (emphasis added).

Here, in contrast, the Complaint does not allege that a CMP smart meter has ever caused Mr. Friedman to experience a single "symptom[ ] specifically linked to a mental or physical condition that substantially limits his ability to perform at least one major life activity." Indeed, although the Plaintiff says that his oncologist thinks opting out of AMI is "factually 'necessary'" for him, ECF No. 14, at 12, that is *not* what is actually alleged. According to the Complaint, Mr. Friedman's doctor says *only* that exposure to RF radiation "*may* exacerbate problems . . . including fatigue, cognitive difficulties, memory issues, and multiple cancer types." Complaint ¶40 (emphasis added). There is no allegation that the doctor has identified any symptom that Mr. Friedman would *actually* – or even *probably* – experience if that exposure occurred.

In a civil suit such as this, a less-than-probable risk of harm is not enough to warrant relief. *United States v. Asare,* at *3 (S.D.N.Y. Aug. 5, 2020) ("To prevail on their claims, Plaintiffs must prove a violation of Title III of the ADA by a preponderance of the evidence."). Thus, Mr. Friedman was required to allege that, but for the opt-out, he would *actually* be unable to safely access CMP's products and services. *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997) ("The burden of showing something by a preponderance of the evidence simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence.") (internal quotation marks, citation, and alterations omitted). In short, even if Mr. Friedman were not collaterally estopped from asserting that the radiation emitted by CMP's smart meters is harmful to him (he is, as discussed below), his Complaint would be deficient because, unlike Metallo's Complaint, it alleges no actual or even probable harm, but only some hypothetical, undefined potential for harm.

*Metallo* is a narrow decision, which stands only for the proposition that a plaintiff who alleges that he suffers from a disability which causes him to be physically harmed by exposure to

a smart meter – and therefore is unable to safely access electrical service without an accommodation – cannot be required to pay for that accommodation. Because the facts alleged here are a far cry from the facts alleged in *Metallo*, that case has no relevance, and it certainly is not controlling here.

### 3. The Other Surcharge Cases Cited by the Plaintiff Are Inapposite.

The Plaintiff cites other cases in which courts have relieved litigants of the obligation to pay the costs associated with the accommodations they seek. Those cases are entirely consistent with the approach taken by CMP in this case, and none of them entitle Mr. Friedman to the relief he seeks here.

As CMP argued in its Motion to Dismiss, the threshold inquiry in any surcharge analysis is whether the accommodation for which a person is charged a fee "is 'required to provide that individual . . . nondiscriminatory treatment' as mandated by the ADA." See ECF 11 at 15-16 (quoting *Dare v. California*, 191 F.3d 1167, 1171 (9th Cir. 1999), *cert. denied*, 531 U.S. 1190 (2001), *and citing Meagley v. City of Little Rock,* 639 F.3d 384, 390-91 (8th Cir. 2011), and *Robishaw v. The Providence Prob. Court,* 206 F. Supp. 3d 723, 730-31 (D.R.I. 2016)). If the accommodation is "required" – that is, if a disabled person cannot access a publicly-available service without it – then the burden shifts to the entity that provides a public accommodation to demonstrate that modifying its policies or practices would impose an undue burden.

Thus, it is not surprising – or the least bit inconsistent with CMP's position here – that in *Bentley v. Peace & Quiet Realty 2 LLC,* 367 F. Supp. 2d 341 (E.D.N.Y. 2005), the court found reasonable a disabled tenant's request that she be relieved of the additional cost of leasing a ground-floor apartment. The tenant-plaintiff alleged that she had undergone several surgeries, the sequelae of which made climbing the stairs to her apartment "very painful and stressful," and

that because of her difficulty in climbing the stairs, she "only [left] her apartment when necessary and [was] dependant of [sic] the assistance of neighbors." *Id*. at 343. In those circumstances, the move to the ground floor was "*necessary* to afford [the handicapped individual] an equal opportunity to use and enjoy a dwelling." *Id.* at 344 (emphasis added).

Likewise, in *Massachusetts v. E*Trade Access, Inc.,* 464 F. Supp. 2d 52 (D. Mass. 2006), the accommodation requested by the blind plaintiffs – the right to use other institutions' accessible (voice-guided) ATMs without a surcharge – was deemed "reasonable in a general sense" because "blind individuals *cannot use* E*Trade's inaccessible ATMs." *Id*. at 58 (emphasis added). Because of the blind customers' handicaps, the only way to ensure that they would actually have access to the same banking services as the non-handicapped, at the same cost, was to grant them "fee-free transactions at accessible ATMs owned or operated by other companies." *Id*.

Here, for the reasons explained above, the same justification does not exist. There is no allegation in the Complaint that Ed Friedman "cannot use" the electricity distributed by CMP if that electricity is measured using the company's standard meter, which is a smart meter. The most that can be said is that he is reluctant to use electricity measured with a smart meter, because he is afraid that radiation emitted by the meter "may" exacerbate some symptoms of his existing medical conditions. None of the federal laws invoked by the Plaintiff give him the right to require that CMP absorb the costs created by his idiosyncratic, scientifically-unsubstantiated fear that smart meters *might* cause him harm.

### 4. The PUC's Silence with Respect to Mr. Friedman's Disease Does Not Deprive the Commission's Decision of Preclusive Effect.

In arguing that the PUC decision may not be given preclusive effect, the Plaintiff says: "At no point does the PUC ruling assess safety as it relates to Mr. Friedman's disability or his

specific circumstances." ECF 14, at 9. In fact, he observes, "[t]he word 'lymphoma' only appears once, as a passing reference." *Id*. Mr. Friedman would have the Court conclude, from this, that the PUC decision has nothing to say about the impact of radio-frequency ("RF") radiation on him personally, and thus no legal impact on his claim.

This argument misconceives the scope and effect of the PUC's finding. The PUC did *not* say that smart meters are safe only for some subset of the population, leaving open the possibility that there are some hypersensitive people for whom smart meters might not be safe. To the contrary, the Commission found as a fact that "AMI, including the use of smart meters, as implemented and operated by CMP, *does not present a credible threat of harm to the health and safety of CMP's customers* and, based on the record of this proceeding is, therefore, safe." *Dec. 19, 2014 Order at 23* (emphasis added). In bringing his administrative complaint to the PUC, Mr. Friedman alleged that he was a "CMP customer." *Letter from Ed Friedman to Karen Geraghty, Maine Public Utilities Commission dated July 29, 2011 and 10-Person Complaint, PUC Case No. 2011-00262*. The PUC therefore unambiguously found that *for Mr. Friedman* – as for *all* CMP's customers – "AMI, including the use of smart meters, . . . is . . . safe." The Commission reached this conclusion, moreover, after having considered numerous studies and detailed testimony – including the testimony of the expert, Dr. Hardell – which Mr. Friedman and his co-parties offered to show that RF radiation causes cancer, or is at least a "possible carcinogen." *Dec. 19, 2014 Order at 6, 22, 24-25, 27, 38-41, 46-47*.[1] It is simply indisputable that the Commission found no "credible" link between RF emissions and cancer.

Mr. Friedman is bound by this decision. He could not assert standing as a party; challenge the safety of AMI generally; hold back evidence of the ways in which he claimed RF

---

[1] *See also FCC 2019 RF Order* at 7 ("[N]o scientific evidence establishes a causal link between wireless device use and cancer . . . .").

emissions would harm *him*; and then, after losing both at the agency level and in the Law Court, take the position that the litigation to which he was a party had no effect on his legal rights.  His claim has been adjudicated once, and he is not entitled to a second bite at the apple.

### 5.  The Application of Issue Preclusion Does Not Offend the Supremacy Clause

Asserting that "the application of collateral estoppel to a state agency ruling on a federal statute is forbidden under the Supremacy Clause," the Plaintiff cites *Bower v. Egyptair Airlines Co.*, 731 F.3d 85 (1st Cir. 2013), a pre-emption case which says nothing about collateral estoppel.

That argument would have a kernel of plausibility if Mr. Friedman had not been a party to the PUC litigation.  The PUC presumably would not have authority to issue a rule which said, in essence: "Smart meters are so safe that exposure to one can never support a claim under the ADA, the Rehabilitation Act, or the FHAA."  If such a state rule were ever promulgated, it would, as the Plaintiff suggests, impermissibly "interfere with" the federal statutory rights of Maine citizens generally, and under principles of preemption it would be ineffective to bar Mr. Friedman's federal claims.   But this case does not present that concern.  CMP's issue preclusion defense is aimed solely at Mr. Friedman, who voluntarily chose to become an active litigant in the state agency proceeding, and then appealed the PUC's decision to the Law Court.  In short, the Plaintiff's claim is barred not by an agency rule which interferes with the federal statutory rights of the public at large, but by an adjudicative decision which applies to him, individually and uniquely, because of his involvement as a party in that prior proceeding.

Dated at Portland, Maine this 9th day of December, 2020.

/s/ Christopher C. Taintor
Attorney for Defendant
NORMAN, HANSON & DeTROY
Two Canal Plaza, P.O. Box 4600
Portland, Maine  04112-4600
(207) 774-7000

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

### Certificate of Service

I hereby certify that on December 9, 2020, I electronically filed Plaintiff's Reply Memorandum in Support of Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Christopher C. Taintor

Christopher C. Taintor, Esq.
Attorney for Defendant
Norman, Hanson & DeTroy, LLC
Two Canal Plaza, P.O. Box 4600
Portland, ME  04112-4600
(207) 774-7000