**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| ED FRIEDMAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|         v. | )  2:20-cv-00237-JDL |
| | ) |
| CENTRAL MAINE POWER | ) |
| COMPANY, | ) |
| | ) |
|     Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

In the early 2010s, Central Maine Power Company (CMP) began installing digital "smart meters" to measure its customers' electricity usage, replacing the analog meters that CMP customers had previously used for that purpose.  Smart meters allow CMP to take measurements remotely and in greater detail than analog meters.  As the Maine Public Utilities Commission (the PUC) has observed, the Smart Meter Program "provides both utility operational savings (e.g., lower storm restoration costs) and a platform for programs that allow customers to lower their energy costs . . . ." *Order (Part II)*, Nos. 2010-345, 2010-389, 2010-398, 2010-400, 2011-085, Order, at 2 (Me. P.U.C. June 22, 2011); ECF No. 11-4 at 2.  However, to transmit signals remotely, smart meters—like cell phones and wireless internet routers—emit a small amount of radiofrequency (RF) radiation, and their deployment sparked health concerns among some of CMP's customers.  For this and other reasons, the Smart Meter Program was the subject of multiple administrative proceedings before the PUC, as well as state court litigation.  In the end, the smart

meters were permitted to be used; however, pursuant to several PUC orders that are implicated by this case, CMP allows customers to opt out of the Smart Meter Program and to continue to use an analog meter.  Customers who opt out must pay a fee.

In July 2020, Ed Friedman brought this action asserting that he cannot use a smart meter because he has non-Hodgkins lymphoma, and that CMP's refusal to waive the opt-out fee for him violates the Americans with Disabilities Act, the Rehabilitation Act, and the Fair Housing Act (ECF No. 1).  CMP has moved to dismiss the Complaint in its entirety (ECF No. 11).  For the following reasons, I deny the motion.

## I.  FACTUAL BACKGROUND

The following facts are derived from the Complaint and from state administrative and judicial records, which I may consider on a motion to dismiss.  *See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

CMP, a public utility that provides electricity service, measures its customers' electricity usage through meters that are installed at their homes.  In 2010, the PUC approved CMP's proposal to implement the Smart Meter Program.  *See Friedman v. Pub. Utils. Comm'n* (*Friedman II*), 2016 ME 19, ¶ 1, 132 A.3d 183, 184.[1]  In 2011, in response to customer complaints, the PUC issued two orders mandating that CMP allow customers to opt out of the Smart Meter Program, but that CMP charge a fee to customers who choose to opt out.  *Id.*   In accordance with these orders, CMP charges customers who choose to retain an analog meter to pay an opt-out fee: an

---

[1] The history of the administrative proceedings regarding CMP's Smart Meter Program, which I do not fully recount here, is set forth in two Law Court decisions: *Friedman v. Pub. Utils. Comm'n* (*Friedman I*), 2012 ME 90, 48 A.3d 794 (2012), and *Friedman II*, 2016 ME 19, 132 A.3d 183.

initial charge of $40 and a recurring monthly fee, which was $16.05 per month as of July 2020.

Friedman has lymphoplasmacytic lymphoma, an incurable form of cancer. His oncologist has cautioned him to avoid any excess radiation in his home because it "may exacerbate the progression of his disease and exacerbate the symptoms of it, including fatigue, cognitive difficulty, and memory issues." ECF No. 1 ¶ 14. On that advice, Friedman has opted out of the Smart Meter Program.

For a period of several years, the PUC allowed customers to withhold the opt-out fee pending litigation over the program. During that period, Friedman paid his CMP bill but not the opt-out fee. When the withholding period ended in 2016, CMP presented Friedman with a bill for the accumulated opt-out fees. Friedman asked CMP to waive the opt-out fee because his lymphoma may be "exacerbated by radiation," *id.* ¶ 29, and later submitted a letter from his oncologist in support of that assertion. CMP denied Friedman's request.

Friedman has brought this action under three federal statutes: Titles II and III of the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12132, 12182 (West 2021); the Rehabilitation Act, 29 U.S.C.A. § 794 (West 2021); and the Fair Housing Act (FHA), 42 U.S.C.A. § 3604 (West 2021). Friedman claims he has been unlawfully discriminated against under all three statutes. He also asserts a disparate-impact claim under the FHA, arguing that the opt-out fee disproportionately burdens persons with Friedman's disease and other similar medical conditions. On October 5, 2020, CMP filed a Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) (ECF No. 11), which is now before the Court.

3

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  Courts apply a two-pronged approach in resolving a motion to dismiss. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).  First, the court must identify and disregard statements in the complaint that merely offer legal conclusions couched as factual allegations.  *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Second, the court "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quotation marks and citation omitted).  The court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor.  *Rodríguez-Reyes*, 711 F.3d at 52-53; *see also Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014) (noting that a court addressing a Rule 12(b)(6) motion must "view the [c]omplaint in the light most favorable" to the non-moving party).  Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Rodríguez-Reyes*, 711 F.3d at 53 (quoting *Iqbal*, 556 U.S. at 679).

## III.  DISCUSSION

CMP's first two arguments for dismissal apply to all of Friedman's discrimination claims: (1) Friedman does not sufficiently allege that the opt-out fee

is discriminatory, and (2) Friedman is precluded from relitigating the PUC's determination that smart meters are "safe."[2]   Additionally, CMP contends that Friedman's disparate-impact FHA claim must fail because the opt-out fee is a valid and generally applicable policy that the PUC requires CMP to implement.  I address these arguments in turn.

## A.    Sufficiency of the Complaint

The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods [or] services . . . of any place of public accommodation . . . ."  42 U.S.C.A. § 12182(a).  The ADA further defines "discrimination" to include "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, . . . or accommodations to individuals with disabilities . . . ."  *Id.* § 12182(b)(2)(A)(ii).  "[A] 'necessary' accommodation is one that alleviates the effects of a disability."  *Schaw v. Habitat for Humanity of Citrus Cty., Inc.*, 938 F.3d 1259, 1269 (11th Cir. 2019) (quoting *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1288 (11th Cir. 2014)).  Additionally, "[a] public accommodation may not impose a surcharge on a particular individual with a disability . . . to cover the costs of measures . . . that are required to provide that individual . . . with the

---

[2] The discrimination standards are generally the same under all three statutes, and the parties do not point to any meaningful differences, so I address all three together, as courts often do.  *See Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Housing & Urban Dev.*, 620 F.3d 62, 66 (1st Cir. 2010) ("[A]uthority under the [ADA] is generally persuasive in assessing handicapped discrimination claims under the [FHA]."); *Calero-Cerezo v. U.S. DOJ*, 355 F.3d 6, 19 (1st Cir. 2004) ("[T]he case law construing the ADA generally pertains equally to claims under the Rehabilitation Act."); *Theriault v. Flynn*, 162 F.3d 46, 53 n.10 (1st Cir. 1998) (Lipez, J., concurring) (noting that Titles II and III of the ADA have equivalent discrimination standards).

5

nondiscriminatory treatment required by the [ADA]."  28 C.F.R. § 36.301(c) (West 2021).

If Friedman's factual allegations are true—as I must assume on a motion to dismiss—then CMP's refusal to waive the opt-out fee may constitute discrimination under all three statutes.  Friedman asserts that using a smart meter "may exacerbate" the progression of his lymphoma as well as his symptoms, "including fatigue, cognitive difficulty, and memory issues."  ECF No. 1 ¶ 14.  Friedman contends that his decision to use an analog meter is not a choice, as it might be for someone without his condition; rather, it is what he must do to safely access CMP's services. In support, Friedman invokes the analogy of a public building that has both stairs and a ramp, but which imposes a fee on every person who uses the ramp to recoup the costs of its installation.  The fee would not be discriminatory under the ADA when charged to a person who could just as easily use the stairs; but imposing the fee on a person in a wheelchair would be discriminatory because that person cannot use the stairs and thus lacks a choice.  This is true even though the fee charged all ramp-users is facially neutral and does not explicitly target persons using wheelchairs.  *See Klingler v. Dir., Dep't of Rev.*, 433 F.3d 1078, 1082 (8th Cir. 2006).

As with a public agency that charged persons with disabilities to use a ramp where the ramp was required to fulfill the agency's obligations under the ADA, charging an opt-out fee for analog meters is discriminatory if those meters are required for CMP to fulfill its obligations under the ADA.  If, as Friedman contends, his medical condition prevents him from safely using a smart meter, CMP's requirement that he pay an opt-out fee to receive an analog meter is discriminatory

if the analog meter is an accommodation required by the ADA. *See Klingler,* 433 F.3d at 1082 (concluding that the "relevant regulation [implementing the ADA] prohibits Missouri from levying a surcharge to cover the cost of any measure required" by the ADA).

CMP further argues, however, that Friedman has not stated a claim that a fee waiver is "necessary" for him to obtain CMP's services, because he has not alleged that he will actually experience physical symptoms from using a smart meter, only that using a smart meter "may exacerbate" the progression and symptoms of his lymphoma. Under CMP's interpretation of the ADA, "Friedman was required to allege that, but for the opt-out [fee], he would *actually* be unable to safely access CMP's products and services." ECF No. 18 at 3.

Contrary to CMP's argument, the question is not whether the modification is necessary to keep Friedman from actually experiencing physical symptoms; rather, it is whether the modification is necessary to afford Friedman full and equal access to CMP's services, i.e., the same access to the same services that people without his condition can obtain. *See Schaw*, 938 F.3d at 1269. Friedman alleges that without an analog meter, he cannot have the same "full and equal enjoyment", 42 U.S.C.A. § 12182(a), of CMP's services made available to persons who do not have his medical condition because if he uses a smart meter, he pays the standard rate but bears a unique risk to his health. However, if he uses an analog meter, he has the same physical experience and peace of mind as a person without his disability, but with an added fee. Under this view, it is the plausible risk to Friedman's health, not a

probable physical toll, that makes a fee waiver "necessary" to afford him equal access to CMP's services.[3]

CMP also challenges the plausibility of Friedman's claim that using a smart meter would risk exacerbating his symptoms, in part because the word "may" is insufficiently strong to allege a meaningful risk, and in part because, according to CMP, the extant scientific evidence about RF emissions establishes that smart meters do not plausibly pose such a risk. But on a motion to dismiss, I must view the allegations in the light most favorable to Friedman as the non-moving party. *See Wilson*, 744 F.3d at 7. The word "may" denotes a range of the frequency of possible outcomes, from almost never to almost always, and every point in between. Interpreting this allegation in the light most favorable to Friedman, it is sufficient to state a plausible claim that using a smart meter would cause a risk to his health that is significant enough to deprive him of "full and equal access" to CMP's services. *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 303 (1st Cir. 2003). Similarly, CMP's assertions regarding the conclusiveness of the science are better suited for summary judgment. For reasons I discuss below, the PUC's prior administrative determinations are not preclusive on the issue presented here, and CMP has not submitted any other records that conclusively settle this factual question at the motion-to-dismiss stage.

---

[3] For similar reasons, Friedman has stated a claim on an unlawful-surcharge theory. Taking Friedman's allegations as true, the opt-out program, as applied to Friedman, "in fact . . . discharges [the] obligation imposed by the ADA" on CMP to provide equal services. *Klingler*, 433 F.3d at 1081. CMP's imposition of a fee for that program, at least as to Friedman, may be unlawful. *See id.* at 1080-82.

8

To prevail, Friedman must eventually prove his factual allegation that having a smart meter installed at his home actually risks worsening his lymphoma's progression or symptoms. But at this point, he has sufficiently alleged that CMP's denial of his request for a fee waiver constitutes discrimination under the ADA, Rehabilitation Act, and FHA.

## B.    Issue Preclusion

CMP also argues that Friedman's claim that an analog meter is necessary to accommodate his disability is barred by issue preclusion (i.e., collateral estoppel).[4] CMP contends that the PUC's 2014 determination, in the course of an administrative proceeding in which Friedman participated, that smart meters are "safe" prevents Friedman from asserting, in this litigation, that he cannot safely use a smart meter.

To determine whether a state administrative finding precludes a subsequent judicial determination, courts will look to the following factors:

> 1) that both the prior and subsequent proceedings involved the *same issue* of law or fact; 2) that the parties *actually litigated* the issue in the prior proceeding; 3) that the prior proceeding *actually resolved* the issue in a final and binding judgment; and 4) that its resolution of that issue of law or fact was essential to its judgment.

*Ríos-Piñeiro v. United States*, 713 F.3d 688, 692 (1st Cir. 2013) (internal quotation marks omitted); *accord Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 8, 940 A.2d 1097, 1100 (describing similar factors under Maine law).

In 2012, the Maine Law Court mandated that the PUC "determine whether smart meters and their associated RF constitute a 'credible threat' to the health and

---

[4] At the hearing on CMP's motion to dismiss, CMP expressly disavowed that it is making an argument based on claim preclusion.

safety of CMP customers," *Friedman II*, 2016 ME 19, ¶ 7, 132 A.3d at 186 (quoting *Friedman I*, 2012 ME 90, ¶ 10, 48 A.3d at 800), pursuant to the PUC's statutory mandate to "ensure safe, reasonable and adequate service," 35-A M.R.S.A. § 101 (West 2021); *see Friedman I*, 2012 ME 90, ¶ 10, 48 A.3d at 798-800.  Between 2012 and 2014, the PUC duly "conducted a comprehensive investigation into the safety of smart meters," *Friedman II*, 2016 ME 19, ¶ 5, 132 A.3d at 185, and in 2014 it issued an order finding that the Smart Meter Program "does not present a credible threat of harm to the health and safety of CMP's customers and . . . is, therefore, safe," ECF No. 11-5 at 23.  In that 2014 order, the PUC did not address whether or how RF exposure might interact with any particular medical condition, nor did it revisit its 2011 orders addressing the appropriateness of the opt-out fee.  *See Friedman II*, 2016 ME 19, ¶ 17, 132 A.3d at 188.  Instead, the question in that proceeding was whether the Smart Meter Program was safe for CMP's customers at large.  This is reflected in the conclusion arrived at in *Friedman II* that "[t]he [PUC] appropriately applied the credible threat standard such that it evaluated what threat or hazard constitutes an acceptably safe level of exposure, balancing the potential for harm against the usefulness and pervasiveness of the technology at issue." *Id.* at ¶ 8, 132 A.3d at 186 (internal quotation marks omitted).

Collateral estoppel simply does not apply here.  As I have explained, in order to make out his discrimination claims, Friedman must demonstrate that he would experience some adversity from using a smart meter, even if that difficulty is not a demonstrable physical effect but simply the risk of one.  Before the PUC, however, the issue of whether persons with particular medical or physical conditions might

experience adverse health impacts from using smart meters was neither presented nor resolved.  In the 2011 opt-out orders, the question of safety was not resolved even to the level of the PUC's statutory mandate to ensure "safe" service.  *See Friedman I*, 2012 ME 90, ¶ 10, 48 A.3d at 800.  And the two Commissioners who rendered the 2014 decision finding smart meters "safe" for the general public explicitly disagreed about whether it might be appropriate for CMP to waive the opt-out fee for customers who submit a medical recommendation from a physician.

Friedman's discrimination claims are not precluded by the PUC's finding that smart meters are safe.

## C.     FHA Disparate-Impact Claim

Finally, CMP argues that Friedman's disparate-impact claim under the FHA must fail because the PUC requires CMP to charge the opt-out fee.

Disparate-impact liability under the FHA does not mandate "the displacement of valid governmental policies."  *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 540 (2015); *see also Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, --- F. Supp. 3d ---, 2020 WL 6390143, at *1 (D. Mass. Oct. 25, 2020) ("Unlike disparate treatment liability, which requires discriminatory intent, disparate impact liability is based on the discriminatory impact of a policy or practice and the absence of an adequate justification.").  The First Circuit has described the justification standard as the defendant's need to show "a legitimate and substantial goal of the measure in question."  *Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 51 (1st Cir. 2000).

The issue is complicated here because the parties have not framed the relevant policy at issue—the opt-out fee generally, or CMP's refusal to waive the fee—with precision.  But Friedman alleges a disparate-impact claim based, at least in part, on CMP's alleged "refusal to make [a] reasonable accommodation" by failing to grant a fee waiver request.  ECF No. 1 ¶ 73.  Additionally, taking Friedman's factual allegations as true, the Complaint suggests that CMP has a policy of categorically denying opt-out fee waiver requests, even when those requests are based on a doctor's recommendation.  Even if what CMP describes as "[t]he PUC's preference for across-the-board equity in ratemaking" is generally a valid justification for charging the opt-out fee when customers do not offer a substantiated medical explanation, ECF No. 11 at 30, it is plausible that CMP's policy of denying all opt-out fee waiver requests might not be justified by the goals of that policy.  And CMP has not submitted any evidence that the PUC mandates such a categorical-denial policy; indeed, as I have discussed, the PUC's 2014 order left open the question of whether CMP should be required to waive the opt-out fee under certain circumstances.

I therefore deny CMP's motion to dismiss Friedman's FHA claim at this stage.  However, this denial is without prejudice as to CMP's assertion of a justification defense.

## IV.  CONCLUSION

For the foregoing reasons, CMP's Motion to Dismiss (ECF No. 11) is **DENIED**.

**SO ORDERED.**                    **Dated:  March 31, 2021**


_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**

12