| | |
|---|---|
| STATE OF MAINE<br>PUBLIC UTILITIES COMMISSION | May 19, 2011<br><br>ORDER (PART I) |
| ELISA BOXER-COOK, ET AL,<br>Request for Commission Investigation in Pursuing the Smart Meter Initiative | Docket No. 2010-345 |
| TERESA SWINBOURNE, ET AL.,<br>Request for Commission Investigation into Unreasonable, Insufficient and Discriminatory Decisions to Implement the use of Smart Meters to CMP Customers Disregarding Choice in Regards to Wireless Activity and Consumer's Right to Privacy Within Their Homes | Docket No. 2010-389 |
| SUZANNE A FOLEY-FERGUSON, ET AL,<br>Request for Commission Investigation Into Advanced Metering Infrastructure In Accordance with the Legislature | Docket No. 2010-398 |
| STEPHEN & DIANE WILKINS, ET AL,<br>Request for Commission Investigation Into CMP's Violation of Homeowner Rights and the Exposure of the Public Health Risk of Smart Meters | Docket No. 2010-400 |
| JULIE TUPPER, ET AL<br>Request for Commission Investigation to Allow CMP Customers to Retain Existing Analog Meters | Docket No. 2011-085 |

WELCH, Chairman; VAFIADES and LITTELL, Commissioners[1]
_____

    This Part I Order describes the Commission's decision in the above captioned proceedings.  Pursuant to Chapter 110, § 1003 of the Commission's Rules, the Commission may issue an Order in two parts.  A complete Part II Order providing the background, analyses, and reasoning underlying the Commission's decision will be issued in the near future.

---

    [1] Chairman Welch did not participate in the above captioned proceedings, did not participate in the Commission's deliberations of these matters, and takes no part in this Order.

**Order (Part I)**                                       -2-                              Docket Nos. 2010-345, et al.

Our decision in this case concludes an investigation that arose from several complaints filed by Central Maine Power (CMP) ratepayers that expressed concern regarding CMP's advanced metering infrastructure (AMI) or "smart meter" program. We have thoroughly reviewed all the filings and information provided by the Parties in this matter, as well as the numerous letters and comments submitted by CMP's ratepayers expressing their opinions and concerns regarding CMP's smart meter program. We have also reviewed the Bench Analysis submitted by Commission Staff on April 22, 2011, and the comments and exceptions to the Bench Analysis.

After considering all of the foregoing information, we order CMP to implement an "opt out" program with respect to its smart meter program whereby CMP customers who do not wish to have a wireless "smart meter" may choose to retain their existing analog electric meter or obtain a "smart meter" with the transmission function disabled. Customers choosing to opt-out will incur a one-time charge and a recurring monthly charge designed to allow CMP to recover the incremental costs associated with the design and implementation of the opt-out program. Low income customers who are eligible for the Low-Income Home Energy Assistance Program (LIHEAP) may receive a discount on both the one-time and monthly opt-out charges. We also order CMP to develop and implement a customer communication plan that will explain the various opt-out options, describe the benefits of the AMI program, describe the functionality of the available meter options, describe the charges associated with the opt-out, and describe the process by which a customer may opt-out. Further, we will allow CMP to defer for future recovery variances in costs of the opt-out program caused by the difference between the assumed and actual opt-out program participation levels. Treatment of the amounts deferred will be addressed concurrently with or as part of the Commission's reevaluation of CMP's current alternative rate plan (ARP).

Accordingly, we

## O R D E R

1. That any CMP residential or small commercial customer that chooses not to have a standard wireless smart meter installed on their premises shall be provided two alternatives from which to choose consistent with this Order: [2]

    a. An electro-mechanical meter (likely the customer's existing meter);

    b. A standard wireless "smart meter" with the internal network interface card (NIC) operating in receive-only mode.[3]

---

[2] Pursuant to CMP's existing Terms and Conditions, customers may also choose to relocate their meter to another location on their home or property.

[3] Standard wireless smart meters with the NIC operating in receive-only mode are being developed but are not currently available. In the interim, customers may retain their existing electro-mechanical meters.

2. That before beginning deployment in a particular area, CMP provide notice to customers in that area about the opt-out options available consistent with the communications plan described in this Order, and provide customers with 30 days from when the notice is sent to make an opt-out enrollment decision and inform CMP of their election.  CMP shall begin providing such notifications as soon as reasonably possible, but in no event later than 30 calendar days after the date of this Order;

3. That, within 30 calendar days after the date of this Part I Order, for customers in areas in which deployment has occurred, CMP contact customers that have requested that a smart meter not be installed and provide notice to those customers about the opt-out options available consistent with the communications plan described in this Order.  CMP may notify customers who use e-billing to pay their monthly CMP bill by email or phone and all other customers by phone;

4. That the customer charges for participating in the opt-out program be as follows:

    a. For the electro-mechanical meter option: an initial, one-time charge of $40.00 and a recurring monthly charge of $12.00;

    b. For the standard wireless "smart meter" with the NIC operating in receive-only mode: an initial, one-time charge of $20.00 and a recurring monthly charge of $10.50;

    c. For any customer that does not enroll in the opt-out program within the 30 period specified above and later chooses to do so: a $25.00 surcharge.  CMP may waive the surcharge if it determines there is a sufficient reason for the customer's failure to notify CMP within the 30-day period.

    The assessment of the Initial Charge will occur on the later of the customer's election of the applicable option or CMP's implementation of the required billing system enhancements.  The Monthly Charge would be assessed to all enrolled opt-out customers beginning on October 1, 2011.  Customers who are not yet enrolled in an opt-out option on October 1, 2011 because, for example, smart meters have not yet been deployed in their area, would begin to be assessed the Monthly Charge when they elect an opt-out option;

5. That for customers determined eligible for LIHEAP whose income is determined to be equal to or less than 100% of the Federal Poverty Guidelines, both the Initial and ongoing Monthly Charges associated with the opt-out option selected by the customer will be reduced by 50%, and for LIHEAP-eligible customers whose income is determined to be greater than 100% of the Federal Poverty Guidelines, the charges will be reduced by 25%.

The program administration for this assistance would be integrated with CMP's current Electric Lifeline Program (ELP) and funding would be provided from CMP's distribution rates through a separate, reconcilable mechanism that would be reviewed and adjusted by the Commission on an annual basis concurrent with the review and reconciliation of ELP funding;

6. That, within 30 days of the date of this Part I Order, CMP develop and implement a communication plan that shall inform customers about the opt-out program during smart meter deployment. The communication plan must provide the following information:

   a. A description of the smart meter program, including wireless smart meter capabilities and communication mode;

   b. The benefits of wireless smart meters and the smart meter program;

   c. The opt-out options available;

   d. Information regarding the development of standard wireless smart meters with the NIC operating in receive-only mode and an estimated date that they will be available for deployment;

   e. The capabilities and communication modes of the opt-out options;

   f. The process to select an opt-out option;

   g. The opt-out option charges (i.e., the Initial and Monthly Charges and the late opt-out election surcharge); and

   h. The existing meter relocation alternative.

   The communications plan should incorporate both written communications and communication via CMP's website. The term "wireless" shall be used when describing standard smart meters. CMP shall continue the plan until such time as the Commission determines it is no longer of benefit to ratepayers;

7. That CMP defer any positive or negative difference in costs caused by the difference between assumed and actual participation levels. CMP shall track and annually report actual opt-out program participation information, including the amounts deferred. Concurrently with or as a part of the reexamination of CMP's distribution rates after the term of its current ARP, the under- or over-recovery of incremental costs due to any difference between assumed and actual participation in the opt-out program will be addressed and rates adjusted prospectively as determined to be just and reasonable by the Commission. The deferral and reconciliation shall be limited only to

      differences in participation levels, and shall not include true-ups for other items;

8. That within 10 calendar days of the date of this Part I Order, CMP shall file Rate Schedules and Terms and Conditions that reflect, as necessary, the above conditions;

9. That within 30 calendar days of the date of this Part 1 Order, CMP shall file a proposal for how amounts deferred in accordance with this Order will be tracked and calculated;

10. That the approval of compliance filings is delegated to the Director of Electric and Gas Industries;

11. That CMP conduct manual reads of the meters of opt-out program participants on a bi-monthly basis. To effectuate bi-monthly meter reads, we waive with regard to CMP the requirement under Chapter 815, Section 8(L) of the Commission's Rules that requires monthly meter reads;

12. That the Chapter 815, Section 10(C) prohibition against disconnecting an opt-out customer when the latest bill issued was based on an estimated read be waived with regard to CMP, provided that the customer's meter had been read consistent with the above bi-monthly meter reading requirement; and

13. That estimated meter readings that are attributable to opt-out customers be excluded from CMP's ARP Service Quality Indicators (SQI), and that SQI performance for non opt-out customers be measured against a requirement of six meter readings per year.

      Dated at Hallowell, Maine, this 19th day of May, 2011.

      BY ORDER OF THE COMMISSION

_____
Karen Geraghty
Administrative Director


COMMISSIONERS VOTING FOR:    Vafiades
                                          Littell

COMMISSIONER ABSENT:        Welch

<u>**Order (Part I)**</u>                                  -6-                          <u>**Docket Nos. 2010-345, et al.**</u>

NOTICE OF RIGHTS TO REVIEW OR APPEAL

    5 M.R.S.A. § 9061 requires the Public Utilities Commission to give each party to an adjudicatory proceeding written notice of the party's rights to review or appeal of its decision made at the conclusion of the adjudicatory proceeding. The methods of review or appeal of PUC decisions at the conclusion of an adjudicatory proceeding are as follows:

    1.    <u>Reconsideration</u> of the Commission's Order may be requested under Section 1004 of the Commission's Rules of Practice and Procedure (65-407 C.M.R.110) within 20 days of the date of the Order by filing a petition with the Commission stating the grounds upon which reconsideration is sought.

    2.    <u>Appeal of a final decision</u> of the Commission may be taken to the Law Court by filing, within 21 days of the date of the Order, a Notice of Appeal with the Administrative Director of the Commission, pursuant to 35-A M.R.S.A. § 1320(1)-(4) and the Maine Rules of Appellate Procedure.

    3.    <u>Additional court review</u> of constitutional issues or issues involving the justness or reasonableness of rates may be had by the filing of an appeal with the Law Court, pursuant to 35-A M.R.S.A. § 1320(5).

<u>Note</u>:  The attachment of this Notice to a document does not indicate the Commission's view that the particular document may be subject to review or appeal. Similarly, the failure of the Commission to attach a copy of this Notice to a document does not indicate the Commission's view that the document is not subject to review or appeal.