UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**ED FRIEDMAN**

    *Plaintiff,*

v.

**CENTRAL MAINE POWER COMPANY,**

    *Defendant.*

**CIVIL ACTION**

**NO. NO. 20-cv-00237-JCN**

## STIPULATION OF UNDISPUTED MATERIAL FACTS

For the purposes of the Motion for Summary Judgment to be filed by Defendant Central Maine Power Company (CMP), the Plaintiff Ed Friedman (Friedman) and CMP stipulate to the following material facts:

1. CMP measures its customers' electricity usage through meters placed in or on their homes.

2. In 2007, CMP sought approval from the Maine Public Utilities Commission (hereinafter "Commission" or "MPUC") to implement an Advanced Metering Infrastructure ("AMI").[1]

3. In 2010, the MPUC approved the installation of AMI technology. [2]

4. AMI allows for automated and remote meter reading, detailed customer usage measurement and data storage, and communications to and from customer meters.[3]

---

[1] Maine PUC, Docket No. 2007-215(11) Order Approving Installation of AMI Technology (Feb. 25, 2010) (Exhibit 1).
[2] Maine PUC, Docket No. 2007-215(11) Order Approving Installation of AMI Technology (Feb. 25, 2010) (Exhibit 1).
[3] Maine PUC, Docket Nos. 2010-345, 2010-389, 2010-398, 2010-400 & 2011-085, Order (Part II) (June 22, 2011) (hereinafter "Opt-Out Order Part II") (Exhibit 2) at 2.

1

5. The meters and other devices in the AMI network transmit data by sending radiofrequency (RF) signals between various points in the network.[4]

6. CMP's AMI system communicates and transmits data using a "mesh" network made up of individual customer meters, wireless repeaters and other devices that have been installed throughout CMP's service territory.[5]

7. A radio device in the meters communicates with other meters and network devices within a Neighborhood Area Network.[6]

8. The Neighborhood Area Networks link to the Wide Area Network, which is a high capacity wireless communications network over CMP's entire service area that moves information to and from the Head End System, which is the "controller" for the AMI System, and coordinates information flows between CMP customers and CMP's Meter Data Management System.[7]

9. Since 2011, CMP's customers have been able to choose between having a "smart" meter which emits radiofrequency radiation (RFR) through airborne and conducted emissions, a "smart" or solid state (digital) meter without transmitter which still emits RFR conducted emissions or an analog meter, which does not.[8]

10. Under Section 12.11 of CMP's Terms & Conditions, a customer who wishes to opt out of the smart meter program for an analog or solid-state meter must pay an Initial Charge of $40, plus a Recurring Monthly Charge.

11. The smart meter without transmitter initial charge is $20.

12. The Recurring Monthly charge was $16.05 per month as of July 1, 2020, and $18.06 per meter beginning as of July 1, 2023. Recurring charge for the smart meter without transmitter

---

[4] Opt-Out Order Part II, at 3.
[5] Opt-Out Order Part II, at 2.
[6] Opt-Out Order Part II, at 2.
[7] Opt-Out Order Part II, at 2-3.
[8] Opt-Out Order Part II, at 12-14.

is $16.09 as of July 1, 2023.

13. The Recurring Monthly charge is expected to increase over time, although the amounts of future increases are unknown.

14. In October or November of 2013, the Plaintiff was diagnosed with lymphoplasmacytic lymphoma, a form of non-Hodgkins lymphoma.[9]

15. Prior to his diagnosis, Plaintiff chose not to have a smart meter installed on his property.

16. The Plaintiff was opposed to smart meters for many reasons before he ever came to believe that his newly diagnosed cancer made him unusually susceptible to the effects of RF radiation.[10]

17. Mr. Friedman's reasons for opposing smart meters included, but were not limited to:

    a. His belief that they have a general negative effect on public health,[11]

    b. His belief that they constitute an electronic trespass,[12] and

    c. His belief that they have an adverse effect on privacy.[13]

Dated at Portland, Maine this 14th day of June, 2024.

/s/ William Most
William Most, *Pro Hac Vice*
David Lanser, *Pro Hac Vice*
Most & Associates
201 St. Charles Avenue, Ste. 2500, # 9685
New Orleans, LA 70170
Phone: (504) 509-5023
E-mail: williammost@gmail.com

---

[9] Complaint ¶¶4 & 13; Friedman Depo. at 47:24-48:1.
[10] Friedman Depo. at 50:25-51:4.
[11] Friedman Depo. at 51:5-8;
[12] Friedman Depo. at 51:9-11;
[13] Friedman Depo. at 51:12-16.

*/s/ Bruce M. Merrill*
Bruce M. Merrill
Law Offices of Bruce M. Merrill
225 Commercial Street, Suite 501
Portland, ME 04101 Phone : (207) 775-3333
Fax : (207) 775-2166
E-mail: mainelaw@maine.rr.com
ATTORNEYS FOR PLAINTIFF


NORMAN, HANSON & DETROY, LLC
*/s/ Christopher C. Taintor, Esq.*
*Russell B. Pierce, Esq.*
Attorneys for Defendant Central Maine Power

Norman, Hanson & DeTroy, LLC
Two Canal Plaza, P.O. Box 4600
Portland, ME  04112-4600
(207) 774-7000
ctaintor@nhdlaw.com

4

Case 2:20-cv-00237-JCN Document 139 Filed 06/14/24 Page 5 of 5 PageID #: 6202