# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

**ED FRIEDMAN**

    *Plaintiff,*

v.

**CENTRAL MAINE POWER COMPANY,**

    *Defendant.*

**CIVIL ACTION**

**NO. 20-cv-00237-JDL**

### PLAINTIFF'S REPLY TO DEFENDANT'S SUPPLEMENTAL SUMMARY JUDGMENT BRIEFING

NOW INTO COURT, through undersigned counsel, comes Plaintiff Ed Friedman who files this response to Defendant's supplemental summary judgment briefing, per the Court's March 6, 2025 order.

For the reasons stated herein and in Plaintiff's supplemental briefing and the original opposition, Defendant's *Motion for Summary Judgment* should be denied.

**A.** **<u>Defendant would not be prejudiced by expert designation of previously-disclosed witnesses.</u>**

There is no dispute that this Court ordered experts to be disclosed previously in this case,[1] and that this Court should consider "the [non-disclosing] party's justification for the late disclosure; the opponent-party's ability to overcome its adverse effects (*i.e.*, harmlessness); the history of the litigation; the late disclosure's impact on the district court's docket; and the [non-disclosing] party's need for the … evidence."[2] But Defendant's application of that analysis misses the mark.

---

[1] ECF No. 33.
[2] ECF No. 159 at 2-3; *Harriman v. Hancock County*, 627 F.3d 22, 30 (1st Cir. 2010) (citing *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 76 (1st Cir. 2009) (citing *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003)), and *Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este*, 456 F.3d 272, 276-77 (1st Cir. 2006)).

1

Defendant first argues that there is no justification for Plaintiff's late disclosure because their "testimony does far more than recount the physicians' first-hand observations of Mr. Friedman's condition, or describe his treatment. Rather, it purports to predict what *could* happen to Mr. Friedman at some time in the future, *if* he lives in close proximity to a smart meter."[3] But the record testimony is based on and includes actual, observed harms. Both doctors have submitted testimony that Plaintiff's condition is not curable and therefore the goal of his treatment is to slow the progression of the disease and provide palliative care.[4] Dr. Goldbas listed specific symptoms he has observed and that those symptoms may be worsened by stress.[5] Dr. Benton testified that "I know in Mr. Friedman's care, he is extremely anxious about [a smart meter in his home], and I think that causes him stress."[6] Not that it *would* or *could* cause Plaintiff stress, but that it does and that the stress is harmful to his diagnosis. Dr. Goldbas further opined on the specific risks of harms that would be caused by exposure to smart meter radiofrequency in his May 25, 2020, request for accommodation letter to Defendant, stating in part that "Exposure to radiation may exacerbate the progression of Mr. Friedman's disease and exacerbate the symptoms of it, including fatigue, bone and joint soreness, cognitive difficulty, and memory issues."[7] These testimonies – which are sufficient for Plaintiff to prove his case – are based in facts, not medical expert opinions.

For the aspects of each doctor's testimony that can be construed as true expert testimony, Defendant has not provided any compelling reason why they are prejudiced by its inclusion. Defendant argues that it "reasonably conclude[d] that the treating physicians would limit themselves to testifying about the medical 'facts' – his cancer diagnosis and the course of his

---

[3] ECF No. 159 at 4. Also note that Plaintiff's late disclosure was necessitated in part by the ruling on *Daubert* (ECF 124), a factor outside of Plaintiff's control.
[4] ECF No. 143-2; ECF No. 137-18, Benton Depo. at 20:8-17.
[5] ECF No. 143-2.
[6] ECF No. 137-18, Benton Depo. at 14:19-20.
[7] ECF No. 143-1.

2

cancer treatment" because the disclosure of other experts "signaled that there had been a tactical decision to designate them, and *only* them, as causation experts, and *not* to have either Dr. Goldbas or Dr. Benton offer opinions on that topic."[8] But this assumption was unfounded. Just because a party introduces an expert on a topic, does not preclude them from offering testimony from others on the same topic. In fact, two of Defendant's experts – Drs. Gabor Mezei and Robert Peter Gale – are expected to offer similar testimony regarding the effects of radiofrequency.

Dr. Benton specifically addressed causation in his request for accommodation letter, stating that he was "concerned that low-level non-ionizing radiation exposure of the type and levels emitted by Electromagnetic Frequency [EMF] invoicing tools may exacerbate problems already experienced by my patient including fatigue, cognitive difficulties, memory issues and multiple cancer types."[9]  So, too, did Dr. Goldbas in his May 25, 2020, request for accommodation letter:

> Exposure to radiation may exacerbate the progression of Mr. Friedman's disease and exacerbate the symptoms of it including fatigue, bone and joint soreness, cognitive difficulty and memory issues. Even low levels of non-ionizing radiation may exacerbate his disease and symptoms.
>
> For that reason it is my professional medical judgement that Mr Friedman should minimize exposure to all forms of ionizing or non-ionizing radiation including wireless routers, Bluetooth devices, smart meters, microwave ovens, garage door alarms, baby monitors, cell phones, portable phones with base stations and any other "smart" devices that use wireless frequencies.[10]

Defendant was on notice that both Drs. Goldbas and Benton would offer testimony on the effects of radiofrequency based on the medical records and request for accommodation letters from both Dr. Goldbas and Dr. Benton.

---

[8] ECF No. 159 at 5-6 (emphasis in original).
[9] ECF No. 137-19 at 144.
[10] ECF No. 143-1.

And in terms of prejudice to Defendant, there is little. There is no trial date impending, or even scheduled. Expert reports would not be necessary, given that neither Dr. Goldbas nor Benton are "retained or specially employed to provide expert testimony."[11] And Plaintiff would not object to initial or further depositions of the two doctors.

**B.     Drs. Benton and Goldbas' testimony is legally sufficient to indicate that a reasonable finder-of-fact could find for Plaintiff on causation.**

Defendant next argues that "Dr. Benton did not express the opinion that exposure to RF would have a negative effect on Ed Friedman's physical health."[12] In support, Defendant cites to a discussion regarding who wrote the first draft of the accommodation letter, apparently to suggest that Plaintiff was not experiencing those physical symptoms.[13] But Dr. Benton also testified that the final version of the letter was only sent after he changed and approved the language.[14] Dr. Benton further testified that a patient – such as Plaintiff – is "the only person who could report a symptom … That's the definition of a symptom, self-complaint."[15] So Dr. Benton *did* express an opinion that radiofrequency exposure would have a negative effect on Plaintiff's health: Plaintiff reported his symptoms and based on those symptoms Dr. Benton approved the language in the letter before it was sent to Defendant.

Defendant next argues that expert testimony regarding the inducement and effects of stress on Plaintiff's cancer "fundamentally chang[es] the factual underpinning and legal theory of the case" because stress was not specifically mentioned in his Complaint.[16] But this is not a new assertion and Defendant's theory relies on a misunderstanding of Plaintiff's doctors' testimony.

---

[11] Fed. R. Civ. Proc. 26(a)(2)(B).
[12] ECF No. 159 at 11.
[13] ECF No. 159 at 11 (citing ECF No. 142 at ¶¶ 100, 105; ECF No. 137-18 at 10:7-11, 12:15-13:21).
[14] ECF No. 137-18 at 13:3-12.
[15] ECF No. 137-18 at 23:4-8.
[16] ECF No. 159 at 1213.

As Defendant points out, Plaintiff made statements in his Complaint such as that a smart meter "may aggravate [his] disability causing further deterioration of [his] health"[17] and that his "medical condition means he cannot have a smart meter at his home."[18] The direct effects of electromagnetic radiation on human health are discussed by Plaintiff's other experts, but these statements are also in line with the testimony from Drs. Benton and Goldbas. As discussed, both doctors testify to the facts that Plaintiff's condition is not curable and therefore the goal of his treatment is to slow the progression of the disease and provide palliative care.[19] In their best judgment both doctors can further state that stress may worsen his symptoms – not that stress is a *separate* symptom from his cancer, but the stress caused by actual or threatened mandated exposure in the sanctity of his own home to CMP- introduced smart meter-emitted electromagnetic fields is a very real physiological part-and-parcel of his diagnosis and treatment.[20]

Plaintiff does not claim that his stress is a mental disability. The stress can cause actual, physical harm to Plaintiff. As Dr. Goldbas states in his Declaration: "Some symptoms which I have observed while treating Mr. Friedman include fatigue, bone and joint soreness, cognitive difficulty, and memory issues. These symptoms may be worsened by stress."[21] This is in addition to the specific, direct harms Dr. Goldbas stated in his request for accommodation letter.[22] Defendant's argument is entirely based on an unfounded premise that the effects of electromagnetic radiation is "junk science" and that Plaintiff's fears are a "subjective, factually unsupported belief."[23] While it may be Defendant's *opinion* that radiofrequency of this kind does

---

[17] ECF No. 1 at ¶ 27.
[18] *Id*. at ¶ 64.
[19] ECF No. 143-2; ECF No. 137-18, Benton Depo. at 20:8-17.
[20] *Id*.
[21] ECF No. 143-2 at ¶¶ 6-7.
[22] ECF 143-1 (stating that a smart meter could exacerbate "fatigue, bone and joint soreness, cognitive difficulty, and memory issues.").
[23] ECF No. 159 at 14.

not have any negative effect on human health or cancer, the extent of the harm caused by radiofrequency is hotly disputed in this case and the subject of several competing expert opinions.

**C.     Conclusion**

For the reasons stated herein, the testimony of Drs. Benton and Goldbas should be accepted and based on the arguments in Plaintiff's briefing and the wide range of disputed material facts throughout the record, the Motion for Summary Judgment denied.

Respectfully submitted,

*/s/ William Most*
William Most, *Pro Hac Vice*
David Lanser, *Pro Hac Vice*
Most & Associates
201 St. Charles Avenue, Ste. 2500, # 9685
New Orleans, LA 70170
Phone: (504) 509-5023
E-mail: williammost@gmail.com

*/s/ Bruce M. Merrill*
Bruce M. Merrill
Law Offices of Bruce M. Merrill
P.O. Box 7933
Portland, ME 04112-7933
Phone: (207) 776-3591
E-mail: mainelaw@maine.rr.com

ATTORNEYS FOR PLAINTIFF