UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ED FRIEDMAN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 2:20-cv-00237-JCN |
| | ) |
| CENTRAL MAINE POWER COMPANY, | ) |
| | ) |
| Defendant | ) |

**SUPPLEMENTAL ORDER ON MOTION FOR SUMMARY JUDGMENT**

The Court previously granted in part and reserved ruling in part on Defendant's motion for summary judgment in this case in which Plaintiff alleges violations of the Americans with Disabilities Act, the Rehabilitation Act, and the Fair Housing Amendments Act. (Summary Judgment Order, ECF No. 155.) In accordance with the Court's Procedural Order (ECF No. 158), the parties filed supplemental written argument addressing the remaining summary judgment issues. (*See* Memoranda, ECF Nos. 159–162.) After consideration of the parties' additional briefing and following further review of the record, the Court grants Defendant's motion for summary judgment on Plaintiff's claims.

**DISCUSSION**[1]

The Court reserved ruling on a final decision on Defendant's motion for summary judgment "to permit the parties to address further (a) Defendant's contention that Plaintiff

---

[1] The outline of the summary judgment record, the recitation of the applicable legal standards, and the analysis of the relevant legal issues contained in the prior summary judgment decision are incorporated

is foreclosed from relying on the opinions of Drs. Benton and Goldbas [David Benton, M.D. and Stephen Goldbas, D.O.], and (b) if the opinions are considered, whether the opinions that are part of the summary judgment record would allow a fact finder to conclude that the requested accommodation is necessary." (Summary Judgment Order at 37.) As explained in the Summary Judgment Order, expert opinion evidence is necessary for Plaintiff to prove his claim that Defendant's failure to waive the fee to opt out of Defendant's smart meter program is discriminatory.

Defendant contends that Plaintiff did not designate Drs. Benton and Goldbas as expert witnesses and should not be permitted to designate them or otherwise rely on their opinions at this stage of the proceedings. Defendant also argues that summary judgment is warranted even if the Court considers the opinions. Plaintiff argues that although he did not designate Drs. Benton and Goldbas as expert witnesses, he should be permitted to rely on their opinions because Defendant has been aware of the opinions throughout the case. Plaintiff maintains that the doctors' opinions, together with the testimony of Plaintiff's designated experts, David Carpenter, M.D., and Paul Heroux, Ph.D., would assist the trier of fact in determining whether exposure to the emissions from a smart meter would increase the risk of harm to Plaintiff, who suffers from an incurable form of cancer.

The record establishes that Plaintiff did not designate Drs. Benton and Goldbas as expert witnesses in accordance with the Scheduling Order. One question, therefore, is

---

here. The Court will repeat the facts and its analysis only to the extent necessary to resolve the remaining issues.

whether in the assessment of Defendant's motion for summary judgment, the Court should consider the treating physicians' opinions regarding the relationship between Plaintiff's potential exposure to the radiofrequency (RF) emissions from Defendant's smart meter and Plaintiff's medical condition.

Plaintiff suggests that some of the information provided by Drs. Benton and Goldbas are facts rather than expert opinions and, therefore, a designation was not required. (Plaintiff's Memorandum at 2, ECF No. 162.) Courts have generally permitted lay testimony from patients and treating physicians about symptoms experienced, medical terminology, and prior diagnoses made and treatments provided, s*ee, e.g.*, *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999), but opinions addressing issues like the medical standard of care or a nonobvious cause of a condition or injury are consistently classified as expert testimony, *see, e.g.*, *Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993); *Marquez-Marin v. Garland*, No. 3:16-CV-01706-JAW, 2021 WL 3557695, at *3 (D.P.R. Aug. 11, 2021); *see also Hrichak v. Pion*, 498 F. Supp. 2d 380, 382 (D. Me. 2007) ("A lay witness is not competent to offer a self-diagnosis of the cause or nature of his impairment; however, he may testify regarding subjective symptoms") (quotation marks omitted); *United States v. Lang*, 717 F. App'x 523, 537 (6th Cir. 2017) ("Although a doctor may properly be called as a lay witness to testify about facts and treatment, she may not testify about the connection between the two without being qualified as an expert—in other words, she may not explain why treatment was medically necessary or appropriate"). The statements of Drs. Benton and Goldbas regarding the effect on Plaintiff's health of exposure to the emissions from a smart meter are properly labeled as expert opinions.

3

Federal Rule of Civil Procedure 26(a)(2) requires that a party disclose expert witnesses who might be used at trial "to present evidence under Federal Rule of Evidence 702, 703, or 705." The orders governing discovery in this case contained deadlines for designating expert witnesses and required Plaintiff to disclose all expert opinions he intended to present and the bases and reasons for each opinion. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," Rule 37(c)(1) generally prohibits the party from using the "information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." "The purpose of the expert disclosure rules is to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) (citation and internal quotations omitted).

As noted above, Plaintiff did not include Drs. Benton and Goldbas among the expert witnesses he designated in accordance with the Scheduling Order and the Federal Rules of Civil Procedure. In the absence of a formal expert witness designation, a plaintiff is ordinarily not permitted to designate the treating physicians as expert witnesses at this stage of the proceedings. *See Rivera v. U.S. Dep't of Veterans Affs.*, No. CV 20-1743 (PAD), 2025 WL 477204, at *2 (D.P.R. Jan. 22, 2025) (because two treating physicians were disclosed as fact witnesses and two other physicians were designated as experts, and because the two treating physicians were long known to the party because they were employed by the party who sought to introduce their testimony, "[t]here is no justification, much less significant justification for the late designation," and they "will not be allowed

4

to testify as expert witnesses"). The Court discerns no reason to deviate from this general rule in this case.

Plaintiff's ability to rely on his designated expert opinion evidence has been a contested issue as evidenced by Defendant's *Daubert* challenge to Plaintiff's designated experts. On Defendant's motions to exclude or limit the testimony of Plaintiff's expert witnesses, the Court (Levy, C.J.) determined that Drs. Heroux and Carpenter could not testify about the effect exposure to RF would have specifically on Plaintiff's condition. (Order, ECF No. 124.) The Court limited the experts' testimony to the general health effects of RF exposure.

The Court's limitation on the opinions that Plaintiff's designated experts, Drs. Carpenter and Heroux, could offer is no reason to permit the treating physicians to offer non-designated opinion testimony. The First Circuit's decision and analysis in *Samaan v. St. Joseph Hosp.,* 670 F.3d 21 (1st Cir. 2012) underscores this point. In *Samaan*, where the plaintiff sued a Maine hospital for negligence because the hospital allegedly failed to provide appropriate treatment during a medical emergency, the plaintiff designated a non-treating physician as an expert witness to establish that the hospital's negligence proximately caused the plaintiff's injuries. *Id.* at 25. After the trial court excluded the expert's testimony based on the defendant's *Daubert* motion, the plaintiff attempted to avoid summary judgment by citing the causation opinions from two treating physicians. *Id.* at 35. The trial court did not consider the opinions of the treating physicians. The First Circuit affirmed the decision, reasoning: "The plaintiff knew how to designate a causation expert" and had not done so as to the treating physicians, disclosing only that "medical

5

treatment providers, presumably including [the two treating physicians], will be called as witnesses on four subjects: past treatment rendered by them, the cost of that treatment, the level of disability, and anticipated future treatment." *Id.* at 36. The First Circuit noted that while certain factors favored leniency, including the absence of "a history of noncompliance" with the rules and the fact that "the need for causation evidence was great," those factors did not outweigh "the extreme prejudice that would have attended an eleventh-hour decision to allow the plaintiff to convert two fact witnesses into experts on causation." *Id.* at 37. The circumstances in this case are not materially distinguishable from *Samaan*.

Plaintiff argues that the failure to designate the physicians should not preclude his reliance on the physicians' opinions because Defendant knew of the opinions through other evidence in the case, such as the physicians' letters requesting an accommodation for Plaintiff. As the district court wrote in *Samaan*, "notice of an opinion is not enough. The rules require formal disclosure for a reason: without it, parties may be hindered in their ability to prepare for trial." *Samaan v. St. Joseph Hosp.*, 274 F.R.D. 41, 47 (D. Me. 2011) (quotation marks and modifications omitted) (quoting *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009)). To permit a designation at this stage of the proceedings would result in the prejudice that the First Circuit recognized in *Samaan*.

Even if Plaintiff had designated Drs. Benton and Goldbas as expert witnesses, Plaintiff could not avoid summary judgment. Under Federal Rule of Evidence 702 and *Daubert*, the proponent of the expert testimony bears the burden of demonstrating that the testimony has a reliable foundation and is calibrated to assist the finder of fact; however,

6

the proponent need not "prov[e] to the judge that the expert's assessment of the situation is correct." *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998).  In general, "when the adequacy of the foundation for the expert testimony is at issue, the law favors vigorous cross-examination over exclusion," *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 119 (D. Me. 2010), and "[i]f the factual underpinnings of [the expert's] opinions [are] in fact weak, that [is] a matter affecting the weight and credibility of their testimony." *Payton v. Abbott Labs*, 780 F.2d 147, 156 (1st Cir.1985).

If an expert's opinion is fundamentally unsupported, however, the opinion must be excluded on foundational grounds.  *Zuckerman v. Coastal Camps, Inc.*, 716 F. Supp. 2d 23, 28 (D. Me. 2010); *see also Insight Tech., Inc. v. SureFire, LLC*, 618 F. Supp. 2d 114, 118 (D.N.H. 2009) (citations omitted) (noting that in the First Circuit, "an expert's opinion expressed in an affidavit or a declaration, submitted for purposes of summary judgment, must be more than a conclusory assertion").  In other words, while district courts have considerable discretion in choosing the manner of or process for testing expert reliability, "the gatekeeper function must be performed." *Martinez-Suarez v. Mansiones de Garden Hills Apartments*, 556 F. Supp. 3d 1, 19 (D.P.R. 2021) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158–59 (1999) (Scalia, J., concurring)).

In this case, neither the records nor the testimony (through deposition and declaration) of Drs. Benton and Goldbas includes a sufficient medical or scientific foundation for an opinion regarding the effect on Plaintiff's condition of his potential exposure to RF emissions from Defendant's smart meter.  The record lacks evidence establishing that Drs. Goldbas and Benton have any special training or expertise regarding

the effect of RF emissions on a person's health. Further, neither cites to any relevant scientific or medical studies to support any opinion they might offer linking the exposure to the emissions to a worsening of Plaintiff's condition.[2]

Plaintiff's contention that the physicians' opinions on the effect of Plaintiff's worry about the potential impact of exposure to the RF emissions are sufficient to support a finding in Plaintiff's favor and thus generate an issue of fact at summary judgment is unavailing. Neither physician opines as to the likelihood or degree to which the stress might impact Plaintiff's condition and neither distinguishes between the potential impact of stress caused by the worry about the smart meter emissions and other life stressors.

Dr. Goldbas asserted that Plaintiff's symptoms "may be worsened by stress." (Goldbas Declaration ¶ 7, ECF No. 143-2.) As explained in the Summary Judgment Order, more than a possibility is required for Plaintiff to generate an issue for a fact finder. Dr. Benton does not comment on the specific potential impact on Plaintiff's health of the stress from worry about the smart meter. After noting Plaintiff's concern about the smart meter, Dr. Benton stated that he "was hoping that [Plaintiff] could live his life with cancer without that stress." (Benton Dep. at 14.)

The physicians' observations regarding the potential impact of stress can reasonably be characterized as conclusory statements regarding the effect of stress on a person's health generally. Because the record contains only general conclusions of harm due to stress, the

---

[2] When asked if at the time he wrote a letter in support of Plaintiff's request for an accommodation in 2016, he had ever formed an opinion that exposure to emissions from smart meters presented a risk to a person's health, Dr. Benton, after commenting that he has some patients who "feel like they can feel it," stated that he had "no research or data to support that in a published article." (Benton Dep. at 15, ECF No. 137-18.)

8

opinions are insufficient to sustain Plaintiff's burden on causation. *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (concluding that when an expert's affidavit was "conclusory" and there was an "absence of meaningful analysis or reasoning," exclusion was appropriate). The lack of such evidence is particularly problematic for Plaintiff given the Supreme Court's teaching that standing cannot rest on an individual's subjective fear of harm unsubstantiated by sufficient objective evidence of a significant risk. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). To permit the stress that results from Plaintiff's worry about a possible harm to establish that the requested accommodation was necessary or to confer standing upon Plaintiff, regardless of the likelihood that the harm would occur or the degree of the harm, would invite a fact finder to speculate and would be inconsistent with the authority cited and discussed in the Summary Judgment Order.

Plaintiff's contention that the opinions of Drs. Benton and Goldbas, together with the opinions of Drs. Carpenter and Heroux, are sufficient to support a finding that his exposure to the RF emissions from a smart meter would cause a quantifiable worsening of his symptoms or hinder the effect of the treatment for his condition fails for similar reasons. Combining the permissible expert opinions of Drs. Carpenter and Heroux with the opinions of Drs. Benton and Goldbas and distilling the asserted harm to its essence, Plaintiff could at most establish: (1) all individuals experience some undefined physiological cancer-related risk from exposure to all sources of radiation; and (2) Plaintiff's concern about the radiation from a smart meter causes him some undefined amount of stress, and stress could

9

cause some undefined "worsening" of Plaintiff's symptoms. Such proof is insufficient to sustain Plaintiff's burden.

Finally, even with the opinions of Drs. Benton and Goldbas, a fact finder could not distinguish between the effect on Plaintiff's health from exposure to the emissions from a smart meter and the effect on Plaintiff's health from exposure to other natural and human-created sources of the same radiation.[3] Without a basis to assess the marginal dose, a fact finder could not reasonably determine whether the asserted effect is likely to be meaningful or trivial. As the Court observed in the Summary Judgment Order, the Court is not aware of a case in which *any* amount of increased risk will support a failure to accommodate claim or Article III standing more broadly. *See Kerin v. Titeflex Corp.*, 770 F.3d 978, 983 (1st Cir. 2014) (noting that "not all risks constitute injury. . . . [W]ere all purely speculative increased risks deemed injurious, the entire requirement of actual or imminent injury would be rendered moot, because all hypothesized, non-imminent injuries could be dressed up as increased risk of future injury") (quotation marks omitted).

## CONCLUSION

After consideration of the parties' supplemental filings and following further review of the record, as to the remaining issues on Defendant's motion for summary judgment, the Court determines that (a) Plaintiff did not designate Drs. Benton and Goldbas as expert witnesses and there is no basis to permit Plaintiff to designate them nor any reason

---

[3] As noted in the Summary Judgment Order, Dr. Carpenter has opined that all individuals are biologically affected continuously by unavoidable exposure to RF from the earth, the sun, radio, television, and other sources. (Summary Judgment Order at 14.)

otherwise to allow Plaintiff to rely on the opinions at this stage of the proceedings, and (b) even if Plaintiff designated Drs. Benton and Goldbas as expert witnesses, the physicians' opinions lack the necessary foundation and, regardless of foundation, would be insufficient to sustain Plaintiff's burden of proof on his claims.  Accordingly, based on the foregoing analysis and the analysis set forth in the Summary Judgment Order, the Court grants Defendant's motion for summary judgment on all Plaintiff's claims.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 15th day of May, 2025